# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------x
LOUISIANA WHOLESALE DRUG CO., INC.,           :
      2085 I-49                                :
      South Service Road                       :  Civil Action No: 1:05CV02210
      Sunset, Louisiana 70584                  :  Judge Colleen Kollar-Kotelly
on behalf of itself and all others similarly situated,  :
                                               :
                 Plaintiff,                    :  JURY TRIAL DEMANDED
                                               :
      v.                                       :
                                               :
WARNER CHILCOTT PUBLIC LIMITED                 :
COMPANY, WARNER CHILCOTT HOLDINGS              :
COMPANY III, LTD., WARNER CHILCOTT             :
CORPORATION, WARNER CHILCOTT (US)              :
INC., GALEN (CHEMICALS) LTD., and BARR         :
PHARMACEUTICALS, INC.,                         :
                                               :
                 Defendants.                   :
------------------------------------------------------------x
```

## DEFENDANT WARNER CHILCOTT'S
## ANSWER TO CLASS ACTION COMPLAINT

Defendants Warner Chilcott Public Limited Company, Warner Chilcott Holdings

Company III, Ltd., Warner Chilcott Corporation, Warner Chilcott (US) Inc., and Galen

(Chemicals), Ltd. (collectively, "Warner Chilcott") answer the allegations of Louisiana

Wholesale Drug Co., Inc. ("Plaintiff") in its Class Action Complaint ("Complaint") as follows:

## PLAINTIFF'S ALLEGATION

1.      This is a civil antitrust action seeking treble damages and other relief arising out
of the unlawful actions of Defendants Warner Chilcott Public Limited Company (formerly Galen
Holdings PLC), Warner Chilcott Holdings Company III, Limited, Warner Chilcott Corporation,
Warner Chilcott (US) Inc., Galen (Chemicals) Limited (collectively "Warner Chilcott"), and its
co-conspirator Barr Pharmaceuticals, Inc. ("Barr").

**ANSWER**

Warner Chilcott states that Paragraph 1 of the Complaint is a description of

Plaintiff's claims to which no response is required.  To the extent a response is required, Warner

Chilcott denies each and every allegation contained in Paragraph 1 of the Complaint.

**PLAINTIFF'S ALLEGATION**

2.    Warner Chilcott and Barr, both of whom are sellers of prescription drugs,
unreasonably restrained the sale of the AB-rated, generic equivalent of defendant Warner
Chilcott's brand-name drug, Ovcon 35, by entering into a horizontal agreement not to compete in
the United States market.

**ANSWER**

Paragraph 2 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies each and every allegation

contained in Paragraph 2 of the Complaint.

**PLAINTIFF'S ALLEGATION**

3.    Warner Chilcott sells Ovcon 35, a frequently prescribed prescription-only oral
contraceptive used to prevent pregnancy. Barr is the only company approved by the United
States Food and Drug Administration ("FDA") to sell a generic version of Ovcon 35 in
competition with Warner Chilcott's branded Ovcon 35.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 3 of the Complaint, except admits that Warner

Chilcott sells Ovcon 35, an oral contraceptive product used to prevent pregnancy.

**PLAINTIFF'S ALLEGATION**

4.    Prior to the challenged agreement, Barr planned to compete with Warner Chilcott
by selling Barr's lower-priced generic Ovcon 35 once Barr received FDA approval. Both Warner

2

Chilcott and Barr predicted that entry of Barr's lower-priced generic into the market would reduce Warner Chilcott's higher priced branded Ovcon 35 sales by capturing approximately 50 percent of the Ovcon 35 sales in the first year alone.

**ANSWER**

      Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint, except denies that Warner Chilcott predicted that a Barr generic would reduce Warner Chilcott's Ovcon 35 sales by capturing 50 percent of the Ovcon 35 sales in the first year alone.

**PLAINTIFF'S ALLEGATION**

5.    To forestall this threat and to protect its Ovcon 35 sales, Warner Chilcott entered into an agreement with Barr which prevented entry of Barr's generic Ovcon 35 into the United States market since April 2004. In exchange for Barr's agreement to keep its generic Ovcon 35 off the market for 5 (five) years, Warner Chilcott paid Barr $20 million.

**ANSWER**

      Warner Chilcott denies each and every allegation contained in Paragraph 5 of the Complaint.

**PLAINTIFF'S ALLEGATION**

6.    As alleged below, Defendants' agreement is a naked restraint of trade among horizontal competitors, and accordingly, constitutes a <u>per se</u> violation of Section 1 of the Sherman Act. As a result of the agreement, there is no generic competition for Ovcon 35. But for the challenged agreement, such generic competition could have and would have begun in or about April 2004 when Barr received final FDA approval to market its AB-rated generic version of Ovcon 35. Absent Defendants' illegal agreement, Barr would have sold its generic version of Ovcon 35 in the United States since at least April 2004, at prices significantly lower than the price of brand-name Ovcon 35. Thus, the Defendants' agreement caused direct purchasers of Ovcon 35 to incur substantial overcharges because, absent the agreement, direct purchasers would have: (a) substituted Barr's cheaper generic version for all or much of their purchases of brand-name Ovcon 35; and/or (b) paid substantially less for brand-name Ovcon 35, if it had faced generic competition.

**ANSWER**

Paragraph 6 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 6 of the Complaint.

**PLAINTIFF'S ALLEGATION**

7. This Complaint is filed and these proceedings are instituted under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs of suit, including a reasonable attorneys' fee, for the injuries sustained by Plaintiff and members of the Class resulting from violations by the Defendants, as hereinafter alleged, of Section 1 of the Sherman Act, 15 U.S.C. § 1. The jurisdiction of this Court is based upon 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 15.

**ANSWER**

The first sentence of Paragraph 7 of the Complaint is a description of Plaintiff's claims to which no response is required. To the extent a response is required, Warner Chilcott denies that it has engaged in any activity in violation of Section 1 of the Sherman Act, and further denies that Plaintiff is entitled to any relief whatsoever. The second sentence of Paragraph 7 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the second sentence of Paragraph 7 of the Complaint.

**PLAINTIFF'S ALLEGATION**

8. The Defendants named herein are found or transact business within this district, and the interstate trade and commerce, hereinafter described, was carried out, in substantial part, in this district. Venue, therefore, is appropriate within this district under 15 U.S.C. §§ 22 and 28 U.S.C. §§ 1391(b) and (c).

**ANSWER**

      Paragraph 8 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the

Complaint, except admits that Ovcon 35 is sold in the District of Columbia.


**PLAINTIFF'S ALLEGATION**

     9.    Plaintiff Louisiana Wholesale Drug Company, Inc. ("Louisiana Wholesale") is a
corporation organized under the laws of the State of Louisiana and is located at 2085 I-49, South
Service Road, Sunset, Louisiana 70584. Plaintiff Louisiana Wholesale purchased the prescription
drug Ovcon 35 directly from defendant Warner Chilcott during the Class Period, as defined
below.

**ANSWER**

      Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 9 of the Complaint, except admits that

Plaintiff Louisiana Wholesale has purchased Ovcon 35 from Warner Chilcott.


**PLAINTIFF'S ALLEGATION**

     10.    Defendant Warner Chilcott Public Limited Company (formerly Galen Holdings
PLC), is a privately-owned, for-profit company organized, existing and doing business under and
by virtue of the laws of Northern Ireland, with its office and principal place of business located at
Old Belfast Road, Millbrook, Larne, BT40 2SH, County Antrim, United Kingdom.

**ANSWER**

      Warner Chilcott denies the allegations contained in Paragraph 10 of the

Complaint, except admits that Warner Chilcott Public Limited Company (formerly Galen

Holdings PLC), was a for-profit company organized, existing and doing business under and by

virtue of the laws of Northern Ireland, with its office and principal place of business located at

Old Belfast Road, Millbrook, Larne, BT40 2SH, County Antrim, Northern Ireland, United

Kingdom.


**PLAINTIFF'S ALLEGATION**

11.     Defendant Warner Chilcott Holdings Company III, Limited is a privately-owned, for-profit company organized, existing, and doing business under and by virtue of the laws of Bermuda, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 11 of the

Complaint, except admits that Warner Chilcott Holdings Company III, Ltd. is a privately-owned,

for-profit enterprise organized, existing, and doing business under and by virtue of the laws of

Bermuda, with its registered office located at Canon's Court, 22 Victoria Street, Hamilton HM12

Bermuda.


**PLAINTIFF'S ALLEGATION**

12.     Defendant Warner Chilcott Corporation is a wholly-owned indirect subsidiary of Warner Chilcott Holdings Company III, Limited and is the direct 100% shareholder of Warner Chilcott (US) Inc. Warner Chilcott Corporation is organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 12 of the

Complaint.


**PLAINTIFF'S ALLEGATION**

13.     Defendant Warner Chilcott (US) Inc., is a wholly-owned subsidiary of Warner Chilcott Corporation. Warner Chilcott (US) Inc., is organized, existing, and doing business under

and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 100 Enterprise Drive, Rockaway, New Jersey 07866-2129.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 13 of the

Complaint.


**PLAINTIFF'S ALLEGATION**

14.     Galen (Chemicals) Ltd., is organized, existing, and doing business under and by virtue of the laws of the Republic of Ireland. Galen Chemicals is directly or indirectly owned or controlled by Warner Chilcott Holdings Company III, Ltd.  Galen Chemicals entered into the anti competitive agreement that prevents Barr's generic Ovcon 35 entry challenged herein.

**ANSWER**

Warner Chilcott admits the allegations contained in the first sentence of

Paragraph 14 of the Complaint.  Warner Chilcott denies the remaining allegations contained in

Paragraph 14 of the Complaint, except admits that Galen (Chemicals) Limited is directly or

indirectly owned by Warner Chilcott Holdings Company III, Ltd., and further admits that Galen

(Chemicals) Limited executed an option agreement with Barr on March 24, 2004.  Warner

Chilcott respectfully refers the Court to the agreement for the terms thereof.


**PLAINTIFF'S ALLEGATION**

15.     Defendant Barr is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware. Barr's office and principal place of business is located at 2 Quaker Road, P.O. Box 2900, Pomona, New York 10970-0519.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 15 of the Complaint.

**PLAINTIFF'S ALLEGATION**

16.    Plaintiff brings this action on behalf of itself and, under Rule 23 of the Federal
Rules of Civil Procedure, as representative of a class defined as follows:

> All persons or entities who have directly purchased Ovcon 35 from
> Warner Chilcott at any time during the period of April 22, 2004,
> through and including the present (the "Class")

Excluded from the Class are Defendants and their officers, directors, management,
employees, subsidiaries or affiliates.

**ANSWER**

Paragraph 16 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies that Plaintiff is entitled to

any relief whatsoever.  Warner Chilcott further denies that this suit can be litigated as a class

action under Rule 23 of the Federal Rules of Civil Procedure or any other rule.

**PLAINTIFF'S ALLEGATION**

17.    Members of the Class are so numerous that joinder of all members is
impracticable. Upon information and belief, direct purchasers of Ovcon 35 include wholesalers,
hospitals, health maintenance organizations, and/or retail chain drug stores. The exact identities
of Class members are ascertainable from, among other sources, the records of Defendants.

**ANSWER**

Paragraph 17 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 17

of the Complaint.

**PLAINTIFF'S ALLEGATION**

18.    Plaintiff's claims are typical of the Class. Plaintiff and all members of the Class
have incurred overcharges because they were deprived of the ability to substitute a cheaper

8

generic version of Ovcon 35 and/or pay substantially lower prices on their purchases of Ovcon 35 as a result of the wrongful exclusion of Barr's AB-rated generic version.

**ANSWER**

Paragraph 18 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 18 of the Complaint, and denies the remaining allegations contained in Paragraph 18 of the Complaint.

**PLAINTIFF'S ALLEGATION**

19.    Plaintiff will fairly and adequately represent the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the Class.

**ANSWER**

Paragraph 19 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 19 of the Complaint.

**PLAINTIFF'S ALLEGATION**

20.    Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex antitrust class actions, particularly antitrust class action litigation relating to the pharmaceutical industry.

**ANSWER**

Paragraph 20 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 20

of the Complaint

## PLAINTIFF'S ALLEGATION

21.     Questions of law and fact common to the members of the Class predominate over questions, if any, that may affect only individual Class members because Defendants have acted on grounds generally applicable to the entire Class.

## ANSWER

Paragraph 21 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 21

of the Complaint.

## PLAINTIFF'S ALLEGATION

22.     Questions of law and fact common to the Class include:

a.     the existence and duration of the contract, combination or conspiracy in restraint of trade alleged herein;

b.     whether the contract, combination or conspiracy alleged herein constitutes a per se violation of Section 1 of the Sherman Act;

c.     if the contract, combination or conspiracy alleged herein does not constitute a per se violation, whether it otherwise represents an unreasonable restraint of trade under Section 1 of the Sherman Act;

d.     whether the activities of Defendants as alleged herein have substantially affected interstate commerce; and

e.     whether, and to what extent, the conduct of Defendants caused antitrust injury to the business or property of Plaintiff and the members of the Class, and if so, the appropriate measure of damages.

## ANSWER

Paragraph 22 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 22

of the Complaint.

## PLAINTIFF'S ALLEGATION

23.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

## ANSWER

Paragraph 23 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies that a class action is a

superior method for the fair and efficient adjudication of this controversy, and further denies that

a class action is the proper vehicle for this action.  Warner Chilcott denies knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in

Paragraph 23 of the Complaint.

## PLAINTIFF'S ALLEGATION

24.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## ANSWER

Paragraph 24 of the Complaint contains legal conclusions to which no response is

required.  To the extent a response is required, Warner Chilcott denies knowledge or information

sufficient to form a belief as to the truth of the each and every allegation contained in Paragraph

24 of the Complaint.

**PLAINTIFF'S ALLEGATION**

25.    In 1984, Congress enacted the Drug Price Competition and Patent Term Restoration Act, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (the "Hatch-Waxman Amendments"), amending the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301-392. Under the Food, Drug, and Cosmetics Acts, pioneer drug manufacturers must obtain FDA approval for any new drug by filing a New Drug Application ("NDA"), which requires the submission of specific data concerning the safety and effectiveness of the drug, as well as any information on applicable patents.

**ANSWER**

Paragraph 25 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the Federal Food, Drug, and Cosmetics Act, 21 U.S.C. § 301-92, as amended by the Drug Price Competition and Patent Term Restoration Act of 1984 ("Hatch-Waxman Act"), Pub. L. No. 98-417, 98 Stat. 1585 (1984), has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

26.    A company seeking FDA approval to market a new drug (i.e., a branded drug) must file a New Drug Application (NDA) demonstrating the safety and efficacy of its product. 21 U.S.C. § 355(b) (2005).

**ANSWER**

Paragraph 26 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the FDA has procedures concerning pharmaceuticals sold in the United States.

**PLAINTIFF'S ALLEGATION**

27.    An "AB-rated" drug is one that the FDA has determined to be bioequivalent to a branded drug. A generic drug is considered bioequivalent to a branded drug if it contains the same active pharmaceutical ingredient as the branded drug, and if there is no significant difference in the formulation, quality and effectiveness of the two drugs. 21 U.S.C. § 355(j)(8)(B) (2005).

**ANSWER**

Paragraph 27 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals, but denies that the Hatch-Waxman Act is applicable to this case.

**PLAINTIFF'S ALLEGATION**

28.     A company seeking to market an "AB-rated" generic version of a branded drug may file an Abbreviated New Drug Application (ANDA) with the FDA. 21 U.S.C. § 355(j) (2005).

**ANSWER**

Paragraph 28 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott admits that the Hatch-Waxman Act has provisions concerning generic pharmaceuticals.

**PLAINTIFF'S ALLEGATION**

29.     Typically, generic versions of brand-name drugs are initially priced significantly below the corresponding brand-name version of the drug. As a result, direct purchasers substitute generic versions of the drug for some or all of their purchases. As time passes, prices for generic versions of a drug tend to decrease even further. Moreover, the brand-name drug continues to lose even more sales and market share to the generics. This price competition enables all direct purchasers of the drugs to: (a) purchase lower-priced generic versions of a drug in substitution for the brand; and/or (b) purchase the brand-name drug at reduced prices. Consequently, in order to maintain their sales of a brand-drug at higher prices, brand-name drug manufacturers have a substantial and compelling financial interest in delaying generic competition.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 29 of the Complaint.

**PLAINTIFF'S ALLEGATION**

30.    Ovcon 35 was originally approved by the FDA in 1976, and it is not subject to patent protection. Warner Chilcott acquired Ovcon 35 from Bristol-Myers Squibb Company on January 26, 2000. As part of the acquisition, Bristol-Myers Squibb Company agreed to supply (and has supplied) Ovcon 35 to Warner Chilcott.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 30 of the

Complaint, except denies that Bristol-Myers Squibb Company ("BMS") has ever adequately

supplied Ovcon 35 to Warner Chilcott, and further denies that BMS has continued to supply

Ovcon 35 to Warner Chilcott.

**PLAINTIFF'S ALLEGATION**

31.    Ovcon 35's net dollar sales have more than doubled since 2000, even as Warner Chilcott has raised Ovcon 35's price.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 31 of the

Complaint, except admits that Ovcon 35's net sales have more than doubled since 2000, and

further admits that Ovcon 35's price has risen.

**PLAINTIFF'S ALLEGATION**

32.    Ovcon 35 is, and has been, one of Warner Chilcott's highest revenue-producing products.

**ANSWER**

Warner Chilcott admits the allegations contained in Paragraph 32 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

33.    Warner Chilcott sells Ovcon 35 at a price substantially above Warner Chilcott's cost of acquiring the product.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 33 of the

Complaint, except admits that Warner Chilcott sells Ovcon 35 at a price above its cost.

**PLAINTIFF'S ALLEGATION**

34.    Ovcon 35 is highly profitable for Warner Chilcott. For the twelve months ending September 30, 2004, Warner Chilcott's net sales of Ovcon 35 were approximately $71.5 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 34 of the

Complaint, except admits that Warner Chilcott earns a profit on its Ovcon 35 sales, and further

admits that for the twelve months ending September 30, 2004 Warner Chilcott's net sales of

Ovcon 35 were approximately $71.5 million.

**PLAINTIFF'S ALLEGATION**

35.    In September 2001, Barr filed a Paragraph I Certification ANDA with the FDA for approval to manufacture and sell an AB-rated generic version of Ovcon 35, on the basis that no patent for the pioneer drug (Ovcon 35) had been filed with the FDA.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 35 of the Complaint.

**PLAINTIFF'S ALLEGATION**

36.    In January 2003, as reported by several news publications, including the Guardian (UK), Barr publicly announced its intention to market generic Ovcon 35 by the end of that year.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 36 of the Complaint.


**PLAINTIFF'S ALLEGATION**

    37.    Barr planned to price generic Ovcon 35 at approximately 30 percent less than the price that Warner Chilcott charges for branded Ovcon 35.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 37 of the Complaint.


**PLAINTIFF'S ALLEGATION**

    38.    Barr projected that its generic Ovcon 35 would capture approximately 50 percent of Warner Chilcott's branded Ovcon 35 sales within the first year of introduction.

**ANSWER**

       Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 38 of the Complaint.


**PLAINTIFF'S ALLEGATION**

    39.    Warner Chilcott expected that Barr would price its generic Ovcon 35 at approximately 30 percent less than the price Warner Chilcott charges for branded Ovcon 35.

**ANSWER**

       Warner Chilcott denies each and every allegation contained in Paragraph 39 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

40.     Warner Chilcott projected that generic Ovcon 35 would capture at least 50 percent of Ovcon 35's new prescriptions within the first year of introduction. Warner Chilcott calculated that, as a result of these lost prescriptions, its net revenues from the sale of branded Ovcon 35 would decline by at least $100 million over a three year period.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 40 of the Complaint.

**PLAINTIFF'S ALLEGATION**

41.     Warner Chilcott had planned to protect its Ovcon 35 revenues from generic competition by introducing a chewable form of the product (Ovcon 35 Chewable) before generic Ovcon 35 entry occurred. Warner Chilcott's strategy was to convert its Ovcon 35 customers to Ovcon 35 Chewable and to stop selling Ovcon 35. The January 17, 2003 publication of the Irish Times quotes a Galen spokesman as saying "At some stage there was going to be generic competition to Ovcon, which is why we took the step of filing the line extension."

**ANSWER**

Warner Chilcott denies the allegations contained in the first two sentences of Paragraph 41 of the Complaint, except admits that Warner Chilcott has developed a new, innovative, patented product, Ovcon Chewable.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 41 of the Complaint.

**PLAINTIFF'S ALLEGATION**

42.     Prescriptions for Ovcon 35 Chewable could not be filled at the pharmacy with a generic Ovcon 35 product (absent express approval of the patient's physician), because any generic version of Ovcon 35 would not be AB-rated to Ovcon 35 Chewable.

**ANSWER**

    Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 42 of the Complaint.


**PLAINTIFF'S ALLEGATION**

   43. By mid-2003, however, Warner Chilcott's "switch" strategy to protect its Ovcon 35 revenues - by converting customers to Ovcon 35 Chewable before generic Ovcon 35 entry - was in jeopardy. Barr's generic Ovcon 35 entry appeared imminent, and Ovcon 35 Chewable had not obtained FDA approval.

**ANSWER**

    Warner Chilcott denies the allegations contained in Paragraph 43 of the

Complaint, except admits that Ovcon Chewable obtained FDA approval in November 2003.


**PLAINTIFF'S ALLEGATION**

   44. In May 2003, Warner Chilcott's chief financial officer warned the company's Board of Directors that generic Ovcon 35 entry was the "biggest risk to the company."

**ANSWER**

    Warner Chilcott denies each and every allegation contained in Paragraph 44 of the

Complaint.


**PLAINTIFF'S ALLEGATION**

   45. By the summer of 2003, Warner Chilcott believed that Barr's generic Ovcon 35 entry could occur as early as September of that year.

**ANSWER**

    Warner Chilcott denies each and every allegation contained in Paragraph 45 of the

Complaint.

**PLAINTIFF'S ALLEGATION**

46.    In August 2003, Warner Chilcott and Barr discussed a possible business arrangement under which Barr would agree to refrain from competing in the United States with its generic Ovcon 35 product.

**ANSWER**

Warner Chilcott denies each and every allegation contained in Paragraph 46 of the Complaint.

**PLAINTIFF'S ALLEGATION**

47.    On September 10, 2003, Warner Chilcott and Barr executed a letter of intent. According to the letter of intent, Warner Chilcott would pay Barr $20 million and Barr would not compete in the United States for five years with its generic Ovcon 35 product when Barr received final FDA approval. Instead of entering and competing, Barr would agree to be available as a second supplier of Ovcon 35 to Warner Chilcott if Warner Chilcott so requested.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 47 of the Complaint, except admits that on September 10, 2003 Warner Chilcott and Barr executed a letter of intent.  Warner Chilcott respectfully refers the Court to the letter of intent for the terms thereof.

**PLAINTIFF'S ALLEGATION**

48.    In February 2004, FTC staff notified Warner Chilcott and Barr that it intended to investigate the non-compete agreement outlined in the defendants' letter of intent because of its potential to significantly reduce competition by eliminating the only generic alternative to Ovcon 35.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 48 of the Complaint, except admits that in February 2004 the FTC Healthcare Division advised Warner Chilcott that it intended to investigate the Ovcon 35 transactions outlined in the letter of intent.

**PLAINTIFF'S ALLEGATION**

49.     On March 24, 2004, Defendants signed their Final Agreement implementing the letter of intent. Warner Chilcott paid Barr $1 million upon signing the Final Agreement.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 49 of the Complaint, except admits that Warner Chilcott and Barr entered into an option agreement on March 24, 2004, and further admits that Warner Chilcott paid Barr $1 million in consideration for the option. Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

50.     Under the Final Agreement, within 45 days after the FDA approved Barr's generic Ovcon 35 ANDA, Warner Chilcott could elect to pay the remaining $19 million to secure Barr's agreement to refrain from marketing generic Ovcon 35 in the United States, either by itself or through a licensee, for five years. The Final Agreement referred to this arrangement as Warner Chilcott's option to an exclusive license to Barr's ANDA for generic Ovcon 35.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 50 of the Complaint, except admits that it entered into an option agreement with Barr. Warner Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

51.     In addition, the Final Agreement gave Warner Chilcott the ability to purchase Ovcon 35 supply from Barr, pursuant to specified payment terms. The ability to purchase supply from Barr would arise, however, only after Barr received final FDA approval for its generic Ovcon 35. Both Warner Chilcott and Barr understood that if, upon receiving FDA approval, Barr went ahead and entered the market with its generic Ovcon 35 product, Warner Chilcott's Ovcon 35 supply needs would immediately be drastically reduced.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 51 of the

Complaint, except admits that Warner Chilcott and Barr entered into a supply agreement, and

further admits that Barr could not supply Warner Chilcott with Ovcon 35 prior to receiving FDA

approval.  Warner Chilcott respectfully refers the Court to the supply agreement for the terms

thereof.


**PLAINTIFF'S ALLEGATION**

52.     On April 22, 2004, the FDA approved Barr's ANDA to produce and market
generic Ovcon 35.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 52 of the Complaint.


**PLAINTIFF'S ALLEGATION**

53.     But for the agreement, upon receiving final FDA approval for its generic Ovcon
35 ANDA, Barr would have had the desire, intent, and capability to market generic Ovcon 35 in
the United States immediately.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 53 of the Complaint, except denies that Barr

had the capability to market a generic Ovcon 35 in the United States upon receiving final FDA

approval.

**PLAINTIFF'S ALLEGATION**

54.     On April 23, 2004, Barr publicly announced its intention to market generic Ovcon 35 if Warner Chilcott chose not to exercise its exclusive license option.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 54 of the

Complaint, except admits that Barr publicly contemplated marketing a generic Ovcon 35 if

Warner Chilcott did not exercise its option, subject to certain risks and uncertainties associated

with making generic Ovcon 35 commercially available.

**PLAINTIFF'S ALLEGATION**

55.     On May 6, 2004, Warner Chilcott exercised the exclusive license option under the Final Agreement by paying Barr $19 million.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 55 of the

Complaint, except admits that on May 6, 2004 Warner Chilcott exercised the option, and further

admits that Warner Chilcott paid Barr $19 million upon the exercise of the option.  Warner

Chilcott respectfully refers the Court to the option agreement for the terms thereof.

**PLAINTIFF'S ALLEGATION**

56.     Warner Chilcott did not begin purchasing Ovcon 35 supply from Barr at that time, but instead continued to purchase Ovcon 35 supply solely from Bristol-Myers Squibb Co. until about May 2005.

**ANSWER**

Warner Chilcott denies the allegations contained in Paragraph 56 of the

Complaint, except admits that product under Barr's ANDA could not be sold immediately upon

FDA approval, and further admits that Warner Chilcott purchased Ovcon 35 from BMS.

**PLAINTIFF'S ALLEGATION**

57.    Under the terms of the Final Agreement, Barr cannot sell generic Ovcon 35 in the United States for five years, or until approximately May 2009. Absent its agreement not to compete with Warner Chilcott, Barr would have started selling generic Ovcon 35 shortly after receiving final FDA approval in April 2004.

**ANSWER**

Warner Chilcott denies each and every allegation contained in the first sentence of Paragraph 57 of the Complaint.  Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 57 of the Complaint, except denies that Barr had the capability to market a generic Ovcon 35 shortly after receiving final FDA approval.

**PLAINTIFF'S ALLEGATION**

58.    Entry of Barr's generic Ovcon 35 into the United States would have quickly and significantly reduced the sales of Warner Chilcott's branded Ovcon 35, and led to a significant reduction in the average price Plaintiff and the Class paid for Ovcon 35 products.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 58 of the Complaint, except denies that entry of a Barr generic Ovcon 35 would have led to a significant reduction in the average price purchasers paid for Ovcon 35 products.

**PLAINTIFF'S ALLEGATION**

59.    Barr has abided by its agreement not to sell generic Ovcon 35 in the United States.

**ANSWER**

      Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 59 of the Complaint.


**PLAINTIFF'S ALLEGATION**

      60.    As of the date of this complaint, Barr remains the only company that has received
approval from the FDA to make and sell an AB-rated generic version of Ovcon 35.

**ANSWER**

      Warner Chilcott denies knowledge or information sufficient to form a belief as to

the truth of each and every allegation contained in Paragraph 60 of the Complaint.


**PLAINTIFF'S ALLEGATION**

      61.    On November 7, 2005 the FTC filed a complaint against Defendants in the United
States District Court for the District of Columbia seeking to permanently enjoin Defendants from
continuing to engage in their unlawful conduct. Twenty-one states and the District of Columbia
have filed a related complaint in the United States District Court for the District of Columbia.

**ANSWER**

      Warner Chilcott admits that on or about November 7, 2005 the FTC, some states,

and the District of Columbia filed complaints against Warner Chilcott in the United States

District Court for the District of Columbia.  Warner Chilcott denies that it has engaged in any

unlawful conduct, and further denies that Plaintiffs in those actions are entitled to any relief

whatsoever.


**PLAINTIFF'S ALLEGATION**

      62.    At all material times, Ovcon 35 was shipped across state lines and sold by Warner
Chilcott to customers located outside the state of manufacture.

**ANSWER**

Paragraph 62 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint.

**PLAINTIFF'S ALLEGATION**

63. During the relevant time period, in connection with the purchase and sale of Ovcon 35, monies as well as contracts, bills and other forms of business communication and transactions were transmitted in a continuous and uninterrupted flow across state lines.

**ANSWER**

Paragraph 63 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint, except admits that Ovcon 35 is sold in the United States.

**PLAINTIFF'S ALLEGATION**

64. During the relevant time period, various devices were used to effectuate the conspiracy alleged herein, including the United States mail, interstate and foreign travel, and interstate and foreign telephone commerce. The activities of Defendants as charged in this complaint were within the flow of, and have substantially affected, interstate commerce.

**ANSWER**

Paragraph 64 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 64 of the Complaint.

**PLAINTIFF'S ALLEGATION**

65.    Plaintiff incorporates by reference the allegations set forth above, as if fully set forth herein.

**ANSWER**

Warner Chilcott incorporates and realleges by this reference each and all of the matters set forth in its Answers to Paragraphs 1 through 64 of the Complaint as if fully set forth herein.

**PLAINTIFF'S ALLEGATION**

66.    Beginning on or about September 10, 2003, when Defendants executed their letter of intent, Defendants engaged in a continuing agreement, combination or conspiracy in unreasonable restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 66 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 66 of the Complaint.

**PLAINTIFF'S ALLEGATION**

67.    The Defendants' contract, combination or conspiracy has included concerted action and undertakings between Defendants for the purpose and effect of: (1) eliminating competition between Warner Chilcott and Barr in the sale of Ovcon 35 and AB-rated generic versions thereof; (2) allocating a portion of Warner Chilcott's supra-competitive profits in the sale of Ovcon 35 to Barr in exchange for Barr's agreement not to sell its generic version of Ovcon 35 for 5 years; (3) fixing, raising, maintaining, or stabilizing the price of branded Ovcon 35 at supra-competitive levels; and (4) depriving Plaintiff and the Class of the ability to purchase cheaper competitive generic versions of Ovcon 35.

**ANSWER**

              Paragraph 67 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 67 of the Complaint.

**PLAINTIFF'S ALLEGATION**

      68.    For the purpose of formulating and effectuating their contract, combination or conspiracy, Defendants performed various acts, as alleged herein, including the following:

          a.      entering into an illegal agreement by which Barr agreed not to sell its generic Ovcon 35 in U.S. commerce in exchange for sharing Warner Chilcottt's supra-competitive profits, and

          b.      depriving direct purchasers of the ability to purchase Ovcon 35 generic equivalents at competitive prices.

**ANSWER**

              Paragraph 68 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 68 of the Complaint, including sub-parts a. and b.

**PLAINTIFF'S ALLEGATION**

      69.    The acts done by the Defendants as part of, and in furtherance of, their contract, combination or conspiracy were authorized, ordered or done by their officers, agents, employees or representatives while actively engaged in the management of Defendants' affairs.

**ANSWER**

              Paragraph 69 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 69 of the Complaint.

**PLAINTIFF'S ALLEGATION**

70.    Defendants' illegal contract, combination or conspiracy to prevent the introduction into the U.S. marketplace of a competing generic version of Ovcon 35 resulted in Plaintiff and the Class paying more than they would have paid for Ovcon 35, absent Defendants' illegal conduct.

**ANSWER**

Paragraph 70 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 70 of the Complaint.

**PLAINTIFF'S ALLEGATION**

71.    Defendants' contract, combination or conspiracy is a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**ANSWER**

Paragraph 71 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 71 of the Complaint.

**PLAINTIFF'S ALLEGATION**

72.    In the alternative, Defendants' contract, combination or conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1, under a "Quick Look" analysis and/or under a full "Rule of Reason" analysis, because its purpose and effect was to unreasonably restrain competition in the United States market for Ovcon 35 and its generic equivalent.

**ANSWER**

Paragraph 72 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 72 of the Complaint.

**PLAINTIFF'S ALLEGATION**

73.    To the extent the law requires it, the relevant geographic market is the United States and its territories.

**ANSWER**

Paragraph 73 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in Paragraph 73 of the Complaint.

**PLAINTIFF'S ALLEGATION**

74.    To the extent the law requires it, the relevant product market is Ovcon 35 and its AB-rated generic equivalents.

**ANSWER**

Paragraph 74 of the Complaint contains legal conclusions to which no response is required.  To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 74 of the Complaint.

**PLAINTIFF'S ALLEGATION**

75.    Defendants have undertaken the foregoing unlawful courses of conduct for the following purposes and with the following effects:

    a.    All of the sales of Ovcon 35 have been allocated to Warner Chilcott, with a portion of Warner Chilcott's supra-competitive profits being allocated to Barr, in exchange for its agreement not to compete with Warner Chilcott;

    b.    Prices for Ovcon 35 have been fixed, raised, maintained or stabilized at artificially high and non-competitive levels;

    c.    Buyers of Ovcon 35 have been deprived of the benefits of free and open competition in their purchases, including the ability to purchase a competing generic version of Ovcon 35; and

    d.    Competition in the production and sale of Ovcon 35 has been restrained, suppressed and eliminated.

**ANSWER**

Paragraph 75 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Warner Chilcott denies each and every allegation contained in Paragraph 75 of the Complaint, including sub-parts a., b., c., and d.

**PLAINTIFF'S ALLEGATION**

76. During the relevant period, members of the Class purchased substantial amounts of Ovcon 35. As a result of the illegal conduct of Defendants, members of the Class were compelled to pay, and did pay, artificially inflated prices for Ovcon 35. Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal agreement, combination or conspiracy alleged herein, because they were deprived of the opportunity to: (1) pay lower prices for the generic version of the drug; (2) pay lower prices for their Ovcon 35 requirements by switching more of the volume of their purchases from the brand to the generic versions; and (3) pay lower prices for the brand-drug Ovcon 35.

**ANSWER**

Warner Chilcott denies knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in the first sentence of Paragraph 76 of the Complaint, and denies the remaining allegations contained in Paragraph 76 of the Complaint.

**PLAINTIFF'S ALLEGATION**

77. Plaintiff demands trial by jury on all issues so triable.

**ANSWER**

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**PLAINTIFF'S ALLEGATION**

WHEREFORE, Plaintiff, on behalf of itself and the Class, respectfully prays that:

a)      The Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure;

b)      The Court declare that the defendants have committed the violations of the Sherman Act alleged herein;

c)      Each Class member recover three-fold the damages determined to have been sustained by each of them; and that joint and several judgment be entered against each defendant in favor of the Class;

d)      The Class recover its costs of suit, including reasonable attorney's fees as provided by law; and

e)      The Class be granted such other relief as the Court determines to be just.

**ANSWER**

WHEREFORE, Warner Chilcott denies that this suit can be litigated as class action, denies that Plaintiff is entitled to any relief whatsoever, and respectfully requests judgment for Warner Chilcott along with costs and attorneys' fees, as may be allowed by law, and such further relief as the Court deems appropriate.  Furthermore, Warner Chilcott denies every allegation contained in the Complaint not specifically herein admitted.

31

## AFFIRMATIVE DEFENSES

Warner Chilcott states the following affirmative defenses without assuming the burden of proof of such defenses that would otherwise rest on Plaintiff.

## FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

The Complaint fails to state a claim against Warner Chilcott on which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

## THIRD AFFIRMATIVE DEFENSE
### (Estoppel)

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE
**(Justification)**

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable, based upon independent, legitimate business and economic justifications, without the purpose or effect of injuring competition.

### SIXTH AFFIRMATIVE DEFENSE
**(Preservation of Business)**

Plaintiff's claims are barred, in whole or in part, because any conduct engaged in by Warner Chilcott was reasonable in relation to the development and preservation of its business.

### SEVENTH AFFIRMATIVE DEFENSE
**(No Injury to Competition)**

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's actions have injured competition in any relevant market.

### EIGHTH AFFIRMATIVE DEFENSE
**(Pro-Competitive Effects)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's alleged actions have pro-competitive effects that benefit competition as a whole in any relevant market.  Warner Chilcott's alleged actions increased competition and are in furtherance of trade.

## NINTH AFFIRMATIVE DEFENSE
### (No Consumer Harm)

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed consumers.

## TENTH AFFIRMATIVE DEFENSE
### (No Harm to Plaintiff)

Plaintiff's claims are barred, in whole or in part, because none of Warner Chilcott's alleged actions have harmed Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Knowledge or Intent)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no knowledge, intention or belief that its actions might illegally restrain trade.  Further, Warner Chilcott could not have known that its actions might illegally restrain trade.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Willful, Flagrant, or Unconscionable Act)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not engage in any willful, flagrant, or unconscionable act.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Good Faith Reliance)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott relied in good faith on the actions of the Federal Trade Commission.

### FOURTEENTH AFFIRMATIVE DEFENSE
**(No Notice)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott had no notice that its actions, if any, were illegal.


### FIFTEENTH AFFIRMATIVE DEFENSE
**(No Concealment)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not conceal any of its actions.


### SIXTEENTH AFFIRMATIVE DEFENSE
**(Failure to Identify Appropriate Markets)**

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not properly alleged either a relevant product market or a relevant geographic market.


### SEVENTEENTH AFFIRMATIVE DEFENSE
**(No Market Power)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has and had no market power.


### EIGHTEENTH AFFIRMATIVE DEFENSE
**(Causation)**

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott's actions were not the proximate cause in fact of Plaintiff's alleged damages.

## NINETEENTH AFFIRMATIVE DEFENSE
### (Failure to Mitigate Damages)

To the extent that Plaintiff has failed to mitigate, minimize or avoid any loss or damage referred to in the Complaint, any recovery must be reduced by that amount.

## TWENTIETH AFFIRMATIVE DEFENSE
### (Lawful Conduct)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott has acted at all times in conformity with all applicable laws, statutes, ordinances and decrees with respect to Plaintiff.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### (Not Maintainable as a Class Action)

Plaintiff's claims are barred, in whole or in part, because the action against Warner Chilcott is not properly maintained as a class action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE
### (Lack of Antitrust Injury)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered antitrust injury.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (No Pattern or Practice)

Plaintiff's claims are barred, in whole or in part, because Warner Chilcott did not engage in any pattern or practice of illegal activity.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (No Standing)

Plaintiff's claims are barred, in whole or in part, because Plaintiff does not have standing.


## TWENTY-FIFTH AFFIRMATIVE DEFENSE
### (Failure to Plead a Proper Party)

Plaintiff's claims are barred, in whole or in part, because Plaintiff has failed to plead a proper party.


## TWENTY-SIXTH AFFIRMATIVE DEFENSE
### (Reservation of Additional Defenses)

Warner Chilcott reserves the right to assert additional affirmative defenses as discovery proceeds.

## JURY DEMAND

Warner Chilcott hereby demands a trial by jury on all claims so triable.

## WARNER CHILCOTT'S PRAYER FOR RELIEF

Wherefore, Warner Chilcott prays as follows:

1.      That the Court enter judgment for Warner Chilcott on all counts;

2.      That the Court award Warner Chilcott reasonable costs and expenses including, but not limited to, attorneys' fees and costs of suit, and such other and further relief as may be appropriate.


December 21, 2005                    Respectfully submitted,


                              /s/
                      By:  _____
                              Kevin J. Arquit, D.C. Bar #438511
                              Charles E. Koob, *pro hac vice* pending
                              SIMPSON THACHER & BARTLETT LLP
                              425 Lexington Avenue
                              New York, New York 10017
                              (212) 455-2000

                              *Counsel for Warner Chilcott Defendants*